IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


FABIAN BACA                                                                    PLAINTIFF


          v.                          Civil No. 08-5044


DR. HUSKINS, Benton County
Detention Center Medical Staff;
SHERIFF KEITH FERGUSON;
HUNTER PETRAY, Jail
Commander, Benton County
Detention Center; and NURSE
SMITH, Benton County Detention
Center Medical Staff                                                           DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

          The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.

          Plaintiff contends he was denied adequate medical care.  Defendants filed a summary judgment motion (Doc. 12).  To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 15).  Plaintiff filed a response to the questionnaire (Doc. 16).  The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

          The plaintiff, Fabian Baca (Baca), was booked into the Benton County Detention Center (BCDC) on November 20, 2007.  *Plaintiff's Response* (Doc. 16)(hereinafter *Resp.*) at ¶ 1(A).  When he was booked in, it was noted on his medical intake sheet that he was currently taking Effexor, Lexapro, and Trazadone.  *Id.* at ¶ 1(B).  He indicated he had high blood pressure, suffered from depression, and had Hepatitis C.  *Id.* at ¶ 1(C).

-1-

According to his booking sheet, the Rogers Police Department reported that Baca had taken a bottle of 100 pills of Tramadol. *Defendants' Exhibit* 1 at page 8 (hereinafter *Defts' Ex.*). Tramadol was not one of Baca's prescribed medications. *Resp.* at ¶ 1(E).

Baca was examined by Dr. Huskins on November 26th. *Defts' Ex.* 3 at page 2; *Resp.* at ¶ 2(A)(without knowledge to agree or disagree). Dr. Huskins evaluated Baca's medications and determined which ones he should receive. *Defts' Ex.* 3 at page 2.

On November 27th Baca submitted a grievance stating he had hives on his face from his beard and not having lotion. *Defts' Ex.* 2 at page 1. In response, Baca was told they did not give lotion and he would be seen by the nurse. *Id.* Baca was seen by the nurse on the 30th and given Benadryl. *Resp.* at ¶ 3(B).

On December 3rd Baca submitted a medical request stating that his medication did not seem to be working. *Defts' Ex.* 2 at page 2. *See Resp.* at ¶ 4 (without knowledge to agree or disagree). He stated he was depressed, paranoid, and couldn't sleep. *Defts' Ex.* 2 at page 2. He stated he needed to see a psychiatrist. *Id.* In response, he was to see the doctor. *Id.*

Defendants records indicate he was seen by medical personnel on December 5th. *Defts' Ex.* 3 at page 2. Baca indicates he does not recall being seen or what treatment he received. *Resp.* at ¶ 5(A) & (B).

On December 6th Baca submitted a request stating that because of his medication he got dizzy when he got down from his top bunk. *Defts' Ex.* 2 at page 3. He asked if he could be moved to a bottom bunk. *Id.* In response, he was told the guards would be asked. *Id.*

-2-

Baca indicates he was told to ask a pod deputy. *Resp.* at ¶ 6(A). He asserts his request was denied. *Id.* at ¶ 6(B). He indicates he suffered aches and pains climbing up to the top bunk. *Id.* He states he also suffered mentally from the stress of worrying that he would fall off the top bunk. *Id.*

On December 9th Baca submitted a medical request about his anti-depression medication. *Resp.* at ¶ 7. He stated that he asked to see the doctor about changing it or raising it. *Id.* Instead, Baca states he was put on Benadryl for a week and that helped him sleep but didn't help his depression. *Id.* In response Baca was told he would see the doctor. *Id.*

Baca was seen by Dr. Huskins on December 12th. *Defts' Ex.* 3 at page 2. *See Resp.* at ¶ 8. He changed Baca's medication. *Id.*

On December 26th Baca submitted a grievance. *Resp.* at ¶ 9. He stated it was very cold in cell 159 in pod 153. *Id.* He stated it was impossible to get sleep in those conditions. *Id.* He asked that they please try to regulate the temperature. *Id.* In response, he was told the heat was working. *Id.*

On December 27th Baca was seen by medical personnel. *Defts' Ex.* 3 at page 3; *Resp.* at ¶ 10. While defendants maintain changes were made in Baca's medication, he asserts no changes were made. *Id.*

On January 4, 2008, Baca submitted a medical request asking to know why his medication had been cut off without seeing if he was stable or not. *Resp.* at ¶ 11(A). In response, he was put on the list to see the doctor. *Id.*

-3-

That same day Baca submitted a grievance stating that whoever was in charge of refilling his medication should understand that you cannot just stop a medication when someone is on anti-depression medication. *Resp.* at ¶ 11(C). In response, Captain Petray stated he would forward Baca's grievance to medical. *Id.* He stated the doctor made the medical decisions. *Id.*

On January 7th, Baca submitted a medical request in which he stated he needed to see the doctor about his anti-depression medication. *Resp.* at ¶ 12(A). He also said he was coming down with a cold. *Id.* In response, someone wrote Baca's medications had been ordered only for a few days and that he was to see the doctor. *Id.* at ¶ 12(B). Baca does not recall if he was seen by the doctor on January 9th but he was not seen by the nurse. *Id.* at ¶ 12(C) & ¶ 12(D).

On February 4th Baca submitted a medical request to talk to the doctor about his medication. *Resp.* at ¶ 13. He stated he was getting too depressed. *Id.* In response, he was put on the list to see the doctor. *Id.*

On February 6th Baca submitted a grievance. *Resp.* at ¶ 14(A). He stated that he went out to get his medication for depression and was told by the deputy there was no medication for him. *Id.* He stated this had happened before. *Id.* In response, Captain Petray stated he had checked his medication sheet and he was getting his medication. *Id.*

According to Baca, Captain Petray only checked to make sure Baca was receiving medication but didn't check to see what type of medication. *Resp.* at ¶ 14(A). Baca stated he had been on two types of medication–high blood pressure medication and anti-depression medication. *Id.* Baca maintains that on February 6th his anti-depression medication was discontinued. *Id.* at ¶ 14(B).

-4-

On February 6th Baca was seen by the doctor and nurse. *Resp.* at ¶ 15. Baca maintains they denied his request for anti-depression medication. *Id.*

On February 13th Baca submitted a medical request to see the doctor about his mental problems. *Resp.* at ¶ 16(A). In response, he was put on the list to see the doctor. *Id.*

On February 17th he was seen by Dr. Huskins and Nurse Smith. *Id.* at ¶ 16(B). He was again denied anti-depression medication. *Id.*

On February 19th Baca submitted a grievance stating he had not received his anti-depression medication since February 9th. *Resp.* at ¶ 17. He stated if he could not get the issue resolved he might need to file a lawsuit. *Id.* In response, he was told the doctor made the medical decisions in the jail. *Id.*

On March 4th Baca submitted a medical request asking to see the doctor about his medication. *Resp.* at ¶ 18. In response, he was put on the list to see the doctor. *Id.*

He submitted another request to see the doctor about his depression medication on March 10th. *Resp.* at ¶ 19(A). According to defendants, Baca was seen on March 12th and his medication was adjusted. *Defts' Ex.* 3 at page 1. *See Resp.* at ¶ 19(B)(without knowledge to agree or disagree).

On March 16th Baca submitted a medical request asking that his high blood pressure medical be refilled. *Resp.* at ¶ 20. On March 25th he submitted another medical request asking that his blood pressure medication be refilled. *Id.* at ¶ 21. He said he had been without it for two weeks. *Id.* In response, he was told he would see the nurse. *Id.*

-5-

All decisions regarding his medical care at the BCDC were made by the jail medical personnel. *Resp.* at ¶ 26. In Baca's opinion, Dr. Huskins believed he was "faking" it and didn't understand how bad his depression was. *Id.* at ¶ 23, ¶ 30 & ¶ 32.

Baca maintains Nurse Smith believed he was giving her false information and therefore didn't try to locate his medical file. *Resp.* at ¶ 28 & ¶ 31. He indicates she believed his medical file was "bogus." *Id.* at ¶ 33.

Baca maintains Dr. Huskins and Nurse Smith do a poor job of seeing to the needs of sick inmates. *Resp.* at page 33. He states "[a]s of today I have not been to medical becaus[e] of how Dr. Huskins and Nurse Smith make you feel. I suffer becaus[e] of th[is] unprofessional conduct." *Id.*

Baca was asked whether he suffered any physical injury as a result of a delay in his receiving medical care. *Resp.* at ¶ 34. He stated he suffered mental injury because he was denied treatment. *Id.* Despite having been asked to describe his injury in detail including the symptoms he experienced, etc., Baca did not further explain. *Id.*

With respect to Sheriff Ferguson, Baca states he wrote to him and let him know he was being denied treatment. *Resp.* at ¶ 37. Baca indicates his family also called Sheriff Ferguson. *Id.* With respect to Captain Petray, Baca indicates he filed grievances with respect to him because he would not do anything about the medical department. *Id.* at ¶ 38.

### Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio*

-6-

*Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment.  First, defendants argue they are entitled to summary judgment in their favor because there is no evidence of deliberate indifference to the plaintiff's serious medical needs.  Second, they contend Baca's claims should be summarily dismissed because he cannot produce any verifying medical evidence that he suffered an adverse effect to his long-term prognosis or any physical injury.  Finally, they maintain Baca cannot prove they violated any clearly established law and they are therefore entitled to qualified immunity.

"[W]hen the State takes a person into its custody and holds him against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007).  In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).  "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 498 (8th Cir. 2008).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"This duty to provide medical care encompasses detainees' psychiatric needs." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002)(citations omitted). *See also Vaughan v. Lacey,* 49 F.3d 1344, 1346 (8th Cir.1995)("Prison staff violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious mental-health-care needs."). Obviously, a psychiatric or mental condition can constitute a serious medical need and pose a risk of serious harm. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).

In this case, Baca was examined by Dr. Huskins for the first time just six days after his incarceration at the BCDC. *Defts' Ex.* 3 at page 2 (Baca booked in on November 20, 2007). The issue of Baca having been on anti-depressant medication at home was discussed at this visit. *Id.*

It is unclear from the record the exact date Baca was started on anti-depressant medication. However, Baca's own medical requests indicate he was on such medication by early December. On December 9th Baca submitted a medical request about his anti-depression medication stating he had asked the doctor the **week before** to look at "changing or raising my medication." *Defts' Ex.* 2 at page 4. In apparent response to this request, a notation appears on

-9-

Baca's medical record on December 12th indicating a prescription was written for Elavil.[1] *Defts' Ex.* 3 at page 2.

On January 4, 2008, Baca complained that his anti-depressant medication was stopped. *Defts' Ex.* 2 at page 6; *Resp.* at ¶ 11(A).  In response, he was placed on the list to see the doctor. *Id.*  The medication logs indicate that at least by January 9th he was again receiving Amitriptyline in the evenings.  *Defts' Ex.* 4.  It appears he continued to receive it through February 9th.  *Id.*  According to the medication logs, Baca was again receiving Amitriptyline by February 15th and was still receiving it through the end of April 2008 when the medication logs submitted with the summary judgment motion end.  *Id.*  The medical records and medication logs indicate the dosage was adjusted several times with the initial dosage having been ten milligrams once a day, then twenty-five milligrams once a day, and then twenty-five milligrams twice a day. *Defts' Ex.* 3; *Defts' Ex.* 4.

While Baca does not believe Dr. Huskins did enough to treat his depression, Baca's disagreements with Dr. Huskins' choice of medication or course of treatment he received clearly do not constitute deliberate indifference.  *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006)(showing of deliberate indifference is greater than even gross negligence and requires more than mere disagreement with treatment decisions); *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997)(prison doctors were not deliberately indifferent where they treated prisoner on numerous occasions and offered sensible medication and treatment); *Vaughan v.*

---

[1]Elavil is a brand name for Amitriptyline hydrochloride a type of antidepressant. http://www.nlh.nih.gov/medlineplus/ency/article/002631.htm (viewed 2/9/2009)

*Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995)(disagreement about proper course of treatment does not support a conclusion that prison doctor's treatment was unreasonable).

With respect to Nurse Smith, Baca maintains she didn't try to locate his medical file and does a poor job of seeing to the needs of sick inmates.  The record does not indicate Nurse Smith's alleged failure to obtain Baca's medical file impeded in anyway the provision of medical care to Baca.  *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 500 (8th Cir. 2008)("While defendants' actions, could have, and probably should, have been more vigilant in obtaining [plaintiff's] medical records . . . .  Defendants' actions with regard to [plaintiffs] medical records, while regrettable, do not constitute deliberate indifference.").  As noted above, Baca was prescribed and received anti-depressant medication.

Nor does Baca's conclusory allegation that Nurse Smith does a poor job of seeing to the needs of sick inmates in general show there is a genuine issue of fact as to whether she exhibited deliberate indifference to his serious health needs.  "Deliberate indifference is equivalent to the criminal law standard of recklessness–a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007)(internal quotation marks and citations omitted).  Baca's mere disagreement with Nurse Smith's professional conduct and demeanor in general, while regrettable, does not rise to the level of deliberate indifference.

Finally, with respect to Sheriff Ferguson and Captain Petray there is no evidence they were personally involved in making any decisions regarding Baca's medical care.  Instead,

-11-

Sheriff Ferguson merely received a complaint from Baca and apparently his family about the medical care he was receiving or lack thereof and Captain Petray merely responded to grievances submitted by Baca and referred those grievances to the medical staff. *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix,* 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

## Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 12) be granted and this case dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of February 2009.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-12-